1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

MARCOS ANTONIO ORTIZ,

12

Petitioner,

13

v.

14

JAMES E. TILTON, Secretary, et al.,

15

Respondents.

Civil No.    06cv1752-L (CAB)

**REPORT AND RECOMMENDATION
DENYING PETITION FOR WRIT OF
HABEAS CORPUS**

16
17

## I.  INTRODUCTION

18

Marcos Antonio Ortiz ("Petitioner"), a state prisoner proceeding pro se, has filed a Petition for

19

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Doc. No. 1] challenging his San Diego County

20

Superior Court conviction in case number SCN 148098 for one count of assault, two counts of assault

21

with a deadly weapon and two counts of felony vandalism. [Lodgment No. 1 at 171-175.]  Petitioner

22

contends his federal constitutional rights were violated because: (1) the evidence was legally insufficient

23

to prove co-defendant had the intent and the present ability to apply the physical force to Cortes and

24

Laura Garcia, a necessary element of assault (and therefore Petitioner's convictions as an aider and

25

abettor must be reversed); and (2) Petitioner's Sixth and Fourteenth Amendment rights to confrontation

26
27
28

1   were violated by the admission of testimonial statements by witnesses not subject to cross-examination

2   by Petitioner. [*See* Doc. No. 1 at 20 - 39; Lodgment No. 7 at 5 - 42.]¹

3        This Court has considered the Petition, Respondent's Answer [Doc. No. 7] and Memorandum

4   of Points and Authorities in Support of Answer to Petition for Writ of Habeas Corpus [Doc. No. 7-2],

5   Lodgements, and all the supporting documents submitted by the parties.²  Based upon the documents

6   and evidence presented in this case, and for the reasons set forth below, this Court recommends that the

7   Petition be **DENIED**.

8                          **II.  FACTUAL BACKGROUND**

9        This Court gives deference to state court findings of fact and presumes them to be correct;

10  Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28

11  U.S.C. § 2254(e)(1)(West 2007); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings

12  of historical fact, including inferences properly drawn from such facts, are entitled to statutory

13  presumption of correctness).³  The facts as found by the state appellate court are as follows:

14              At about midnight on July 14, 2002, 19-year-old Laura Garcia was driving home
        from a restaurant in her Honda sedan with her 18-year-old sister Karla Garcia and their
15      friend Ina Cortes.⁴  Karla was sitting in the front passenger seat; Cortes was seated behind
        her.
16              As they headed westbound on Highway 78, Laura saw a van in the center lane
        with three male occupants.  Several minutes later, while exiting the freeway, Laura saw
17      the van behind her.  She turned right and noticed that the van was very close, tailgating.
        Thinking the people in the van were in a hurry, Laura sped up, but when she stopped at
18      the next intersection in the left-hand turn lane the van stopped directly behind her.  She
        glanced in her rearview and side mirrors and saw the van's front passenger, dressed in
19      baggy pants and shirt, exit with something in his hand that looked like a chain.  Laura
        guessed he was probably drunk and about to vomit and didn't think anything of it.  She
20      and Karla then heard a loud crash, turned and saw that the rear window of the car behind

21  _____

22  ¹ This federal Petition attaches and incorporates by reference Petitioner's Petition for Review
    with the California Supreme Court (state petition). [*See* Doc. No. 1 at 14 - 40.] The copy of the state
23  petition attached to this federal Petition only includes odd-numbered pages (presumably a copying error
    when the federal Petition was prepared).  An entire copy of the state petition, however, has been lodged
24  with the Court as Lodgment No. 7.  Therefore, this Court assumes that the arguments set forth in this
    federal petition are identical to those presented in the state petition, contained in its entirety in
25  Lodgement No. 7.

26      ² Petitioner did not file a Traverse.

27      ³ Both parties have adopted the statement of facts contained in the state appellate court opinion.
    *See* Lodgement No. 7 at 4; Doc. No. 7-2 at 2, fn. 2.

28      ⁴ Footnote 2 at this point in the original text reads: "To avoid confusion, we refer to Laura and
    Karla Garcia by their first names.  We intend no disrespect by use of this shorthand device."

Cortes was "completely shattered." After Cortes heard the crash, she took her seatbelt off and moved forward because she "thought it was going to be a break [*sic*] and splatter the glass." She was scared because she "thought the . . . glass was going to come towards [her] and that the window was going to pop." From her mirror, Laura saw the man run back to the van. Both Laura and Karla saw the van take a right onto South Sante Fe Street.

Scared, Laura told both Karla and Cortes to call 911. She turned left at the green light and then decided to turn back to get the van's license plate number. She slowly drove toward the van, which had parked in the middle of the street. As she got closer, she saw the three men step out including the driver, who she identified at trial as Ortiz, and the front passenger, who she identified as codefendant Jesus Amado Garcia. Becoming more scared, she slowed down further.

As Laura slowed to a stop she began looking for a way out of the situation. Garcia began walking toward them directly in front of her car. He jumped on the car's hood, and for [*sic*] moment he and Laura were face to face. Garcia got off the car, and immediately afterwards an object hit the windshield where Laura was sitting, shattering the driver's side. Laura sped away, with glass falling on her from the sagging windshield.

Ortiz, Garcia and the other man ran back to the van and began following the girls. While Laura made a series of turns, Karla made a panicked call to a male friend of theirs, Isak Carbajal. Carbajal told them to call the police and meet him at a particular gas station. Eventually the girls drove to the gas station where they met Carbajal and his friend Ivan Rodriguez. Both Carbajal and Rodriguez were unarmed.

Laura exited her car and told Carbajal that the van was coming, and that they had contacted the 911 operator. The van approached with Ortiz driving and Garcia standing in the passenger door, and the third occupant standing at the open sliding door. The men yelled at the group, repeatedly asking them where they were from and telling Carbajal, "Get off the phone, homey." Because the men were "dressed like gangsters," Laura understood their question as asking what gang they were from. She also heard them saying "Los." It sounded to her like the street gang South Los, which she was familiar with having lived in the area and also because she had been involved in an organization mentoring teens at risk of gang involvement. Laura took the statement, "Los," to mean the men were asking them to identify any gang affiliation.

Rodriguez asked the men why [*sic*] were doing this to three girls, but the men merely repeated their questions. Garcia and the rear passenger exited the van, and Ortiz drove the van towards Laura's car. She jumped in her car and circled the station with Ortiz following her in the van. When the van stopped, Laura pulled up close to get its license plate. Garcia ran toward Carbajal and Rodriguez with a rusty chain and began rapidly striking the windshield and taillights of Carbajal's car. He went back to the van and then returned to swing the chain at Carbajal's face. Garcia missed Carbajal but struck Rodriquez in the side of the head. Stunned and bleeding from his head, Rodriguez fell to the ground on his knees. At some point, the third man from the back of the van hit Carbajal's back window with a baseball bat.

At about that time, Ortiz exited the van and approached Carbajal with what appeared to Laura and Carbajal to be a knife in his hand; he dropped it, picked it up and pointed it toward Carbajal and Rodriguez. Both Garcia and Ortiz got back into the van. At some point during these events Laura drove away at Carbajal and Rodriguez's urging.

Less than a minute later, sheriff's deputies arrived. They stopped the van two or three miles from the gas station and detained Ortiz, who had been driving, and Garcia, who had bloodstains on his pants and sweatshirt and blood on his hands. They found a two-foot-long metal chain with blood on it in the van's backseat, but no knife or bat.

At trial, the People presented the expert testimony of Sheriff's Detective Eric Friedrich about matters of the South Los gang so as to establish the elements of the criminal street gang enhancement. (§ 186.22, subds. (b)(1), (b)(4).) On direct examination, the prosecutor elicited Detective Friedrich's opinions regarding the background and traits of the South Los gang and its members, including offenses committed by South Los gang members and gang behavior in general. As to Garcia

1   (Ortiz's codefendant at trial), Detective Friedrich testified he had reviewed field
2   interview cards revealing that at multiple times between May of 1992 and December of
    2001, Garcia had claimed membership in the South Los gang and/or admitted his gang
3   moniker to various law enforcement officers.   Detective Friedrich gave similar
    information as to Ortiz.   Specifically, the detective stated his gang moniker was
4   "Payaso," and that Ortiz had several tattoos including a "South Los" tattoo on his back,
    three dots on his left wrist, and tattoos of the letters "S" and "L" on his right and left
5   knees respectively, signifying the South Los gang.   According to Detective Friedrich,
    Ortiz had several contacts with various law enforcement officers between April 1990 and
6   August of 2001 in which he claimed membership in the South Los Gang and/or admitted
    his moniker, was found in association with other gang members, or possessed
7   paraphernalia specific to the South Los Gang.
        Detective Friedrich further testified about the primary activities of the South Los
8   gang; he opined based on their gang activities as well as his files incorporating arrest
    reports, crime reports and field interview cards, that Javier Martinez and Gary Ramirez
9   were South Los gang members, and were members when they committed section 245,
    subdivision (a)(1) assaults in February 2000 and February 1997 respectively.   Over
10  defense counsel's objection, the People introduced into evidence certified copies of
    records showing Martinez's and Ramirez's section 245 convictions.
11      Ultimately, Detective Friedrich opined that Garcia and Ortiz were members of
    the South Los gang and committed the charged offenses in association with and for the
12  benefit of that gang.   After his testimony, the trial court gave several limiting
    instructions, including that the hearsay matters relied upon by Detective Friedrich were
13  to be considered by the jury only in evaluating the basis for his opinion and not for the
    truth of the matter asserted.[5]
14  [Lodgment No. 6 at 2 - 7.]

15

16

17  _____

18      [5]  Footnote 3 at this point in the original text reads:
        "'[Detective] Friedrich has testified that he considered information received from other officers,
19  gang members['] information documented in Cal Gangs, F.I. or Field Investigation cards, police reports,
    information documented in a gang book, in formulating an opinion.   An expert is entitled to rely upon
20  certain hearsay matters.   Hearsay matters are only to be considered by you in evaluating the basis of the
    expert's opinion and are not to be consider [sic] for the truth of the matter asserted.['"]
21      "In addition, [Detective] Friedrich has testified on several occasions that either Mr. Garcia or Mr.
    Ortiz has made admissions of the gang membership, i.e., claims South Los.   At particular times you were
22  instructed that such an admission may only be used as they might pertain to the defendant's making such
    an admission and cannot be used against his co-defendant for any purpose.['"]
23      "Evidence has been introduced that each defendant is a member of a particular gang.   Such
    evidence, if believed, was not received and may not be considered by you to prove that he is a person
24  of bad character or that he has a disposition to commit crimes.   Such evidence was received and may be
    considered by you only for the limited purpose of determining . . . if it tends to show the identity and
25  motive of the person who committed the crimes, if any, of which the defendant is accused, the existence
    or nonexistence of a bias or interest of any witness.['"]
26      "For the limited purpose for which you may consider such evidence, you must weigh it in the
    same manner as you do all the other evidence in this case.   You are not permitted to consider such
27  evidence for any other purpose except as it relates to the proof of each and every element of the
    allegations alleged in the violation of Penal Code section 186.22 [subdivision] (b)(1), i.e., that the crimes
28  alleged [to] have been committed were for the benefit, at the direction of and in association with a
    criminal street gang with a specific intent to promote further and assist in criminal conduct by gang
    members."'"

### III. PROCEDURAL HISTORY

By information filed on October 29, 2002, in San Diego Superior Court case no. SCN 148098, the San Diego District Attorney charged Petitioner and co-defendant Jesus Amado Garcia in counts 1, 2 and 3 with assault with a deadly weapon and/or by means of force likely to cause great bodily injury, in violation of California Penal Code section 245(a)(1). [Lodgment No. 1 at 2 - 3.] As to those counts, it was also alleged that (1) Garcia personally used a deadly weapon (Cal. Pen. Code § 1192.7(c)(23); (2) Garcia and Petitioner committed the previous felony offenses for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (Cal. Pen. Code § 186.22(b)(1)). *Id.*

The information also charged Garcia and Petitioner in counts 4 and 5 of vandalism over $400, in violation of California Penal Code section 594(a)(b)(1). [Lodgment No. 1 at 3 - 4.] As to those counts, it was also alleged that Garcia and Petitioner committed the previous felony offense for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (Cal. Pen. Code § 186.22(b)(1)). *Id.*

Finally, the information alleged that Petitioner had two serious felony prior convictions (Cal. Penal Code §§ 667 (a)(1), 668 and 1192.7(c)) and four "strike" prior convictions (Cal. Penal Code §§ 667 (b) - (i), 668 and 1170.12). [Lodgment No. 1 at 4 - 5.]

A joint jury trial for Petitioner and Garcia was held April 24 - May 7, 2003. [Lodgment No. 2 at Vols. 3 - 9] On May 7, 2003, the jury found Petitioner guilty of assault (Cal. Penal code § 240)(count 1); assault with a deadly weapon and/or by means of force likely to cause great bodily injury (Cal. Penal Code § 245(a)(1) [counts 2, 3]); and felony vandalism (Cal. Penal Code § 594(a), (b)(1) [counts 4, 5]). [Lodgment No. 1 at 171 - 175.] The jury also found true allegations that in committing the offenses in counts 2 through 5, Petitioner acted for the benefit of, or at the direction of, or in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1). [Lodgment No. 1 at 172 - 175.]

On May 14, 2003, a court trial was held on the prior convictions that were alleged as to Petitioner. The court ruled that the People met their burden in showing that the person alleged in both alleged prior felonies was the Petitioner, and that both priors met the statutory requirements. [Lodgment No. 1 at 532; Lodgment No. 2 at Vol. 10.]

1    On July 16, 2003, Petitioner was sentenced to an aggregate prison term of 61 years to life.
2    [Lodgment No. 1 at 488 - 489; Lodgment No. 2 at Vol. 11.]

3    On May 17, 2004, Petitioner filed a direct appeal from the state judgment of conviction with the
4    Court of Appeal for the State of California, Fourth Appellate District, Division One. [Lodgment No. 3.]
5    The appeal (Court of Appeals No. D042552) was based on the same grounds that are being set forth in
6    this federal habeas petition:   (1) the evidence was legally insufficient to prove co-defendant had the
7    intent and the present ability to apply the physical force to Cortes and Laura Garcia, a necessary element
8    of assault (and therefore Petitioner's convictions as an aider and abettor must be reversed); and (2)
9    Petitioner's Sixth and Fourteenth Amendment rights to confrontation were violated by the admission
10   of testimonial statements by witnesses not subject to cross-examination by Petitioner. [Lodgment No.
11   3 at  23 - 57.]

12   On April 12, 2005, the California Court of Appeal, Fourth Appellate District, Division One, (in
13   an unpublished decision) affirmed the conviction of Petitioner. [Lodgment No. 6.]

14   On May 20, 2005, Petitioner filed a Petition for Review in the California Supreme Court.
15   [Lodgment No. 7.] In the Petition for Review, Petitioner set forth essentially the same claims that were
16   set forth in his appeal to the Court of Appeal for the State of California. [Lodgment No. 7 at 5 - 42.]

17   On July 13, 2005, the California Supreme Court denied the petition for review. [Lodgment No.
18   8.]

19   This (federal) Petition was filed on August 25, 2006. [Doc. No. 1.] Respondent filed his Answer
20   [Doc. No. 7] and Memorandum of Points and Authorities in Support of Answer to Petition for Writ of
21   Habeas Corpus [Doc. No. 7-2] on December 22, 2006.  Petitioner has not filed a Traverse.

22                                **IV.  DISCUSSION**

23   Petitioner contends his federal constitutional rights were violated because: (1) the evidence was
24   legally insufficient to prove co-defendant had the intent and the present ability to apply the physical force
25   to Cortes and Laura Garcia, a necessary element of assault (and therefore Petitioner's convictions as an
26   aider and abettor must be reversed); and (2) Petitioner's Sixth and Fourteenth Amendment right to
27   confrontation was violated by the admission of testimonial statements by witnesses not subject to cross-
28   examination by Petitioner. [Doc. No. 1 at 20 - 39; Lodgment No. 7 at 5 - 42.] Respondent contends that

this Petition should be dismissed because: (1) Petitioner has failed to present a viable claim under the Antiterrorism and Effective Death Penalty Act ("AEDPA") because he cannot demonstrate that the state courts' resolution of his claims was unreasonable within the meaning of 28 U.S.C. § 2254(d);  (2) the state courts reasonably concluded that sufficient evidence supports Petitioner's assault convictions; and (3) the state courts reasonably rejected Petitioner's claim that his Sixth Amendment right to confrontation was violated in this case. [Doc. No. 7-2 at 6 - 16.]

1.  Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

"AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)).  To obtain federal habeas relief, Petitioner must satisfy either section  2254(d)(1) or section 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the]

1    Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*,

2    529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of

3    clearly established federal law, "if the state court identifies the correct governing legal rule from this

4    Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

5    An unreasonable application may also be found, "if the state court either unreasonably extends a legal

6    principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably

7    refuses to extend that principle to a new context where it should apply." *Id.*

8        "[A] federal habeas court may not issue the writ simply because the court concludes in its

9    independent judgment that the relevant state-court decision applied clearly established federal law

10   erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." *Lockyer v.*

11   *Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).  Clearly

12   established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme]

13   Court's decisions." *Williams*, 529 U.S. at 412.

14       Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision

15   that was based on an unreasonable determination of the facts in light of the evidence presented in state

16   court." 28 U.S.C.A. § 2254(d)(2) (West 2006).  In order to satisfy this provision, Petitioner must

17   demonstrate that the factual findings upon which the state court's adjudication of his claims rest,

18   assuming they rest on a factual determination, are objectively unreasonable. *Miller-El v. Cockrell*, 537

19   U.S. 322, 340 (2003).

20       Where there is no reasoned decision from the state's highest court, the Court "looks through"

21   to the underlying appellate court decision. *Y1st v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the

22   dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must

23   conduct an independent review of the record to determine whether the state court's decision is contrary

24   to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223

25   F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes*

26   *v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court

27   precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as

28

1  neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]"

2  *id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*

3        2.  Claim One – Insufficient Evidence

4        Petitioner contends there is insufficient evidence to support his convictions for assault on Cortes

5  and assault with a deadly weapon on Laura Garcia under an aiding and abetting theory because his co-

6  defendant, Garcia, had no present ability to strike either Cortes or Laura while they were inside Laura's

7  car. [Lodgment No. 9 at 9.]        Petitioner argues that, "since the facts established that it was co-defendant

8  Garcia who was alleged to have struck [Laura's] vehicle and Rodriguez, [Petitioner's] guilt as a principal

9  on the assault charges can only be based on his having aided and abetted their commission." [Lodgment

10  No. 7 at 8.]  After laying out the elements of aiding and abetting and assault, Petitioner claims that

11  Garcia had no present ability to strike either Cortes or Laura because they were inside the vehicle.

12  [Lodgment No. 7 at 9.]

13        Respondent contends that the appellate court's decision as to Petitioner's first claim was not

14  contrary to, or an unreasonable application of, clearly established Supreme Court precedent. [Doc. No.

15  7-2 at 6-11.]

16            a.  Cortes

17        As to Cortes, Petitioner claims that the evidence was legally insufficient to prove Garcia intended

18  to commit a battery because the rear window of Laura's car was tinted, and as a result, he [Garcia] could

19  not have known Cortes was sitting in the rear seat.  Petitioner also contends that there is no evidence of

20  Garcia's present ability to apply physical force because his hands would not be sufficient to apply such

21  force. [Lodgment No. 7 at 9-11.]

22        Petitioner presented this claim in the petition for review filed in the state supreme court.

23  [Lodgment No. 7 at 9 -11.] That petition was denied by an order which stated in full: "Petition for review

24  DENIED." [Lodgment No. 8, People v. Ortiz, No. S134027 (Cal. July 13, 2005).] This claim was also

25  presented to the appellate court on direct appeal. [Lodgment No. 3 at 23 - 28.] The appellate court

26  rejected the claim on its merits. [Lodgment No. 6, People v. Ortiz, No. D042552, slip op. at 8-13.] The

27  Court will therefore look through the silent denial by the state supreme court to the last reasoned opinion

28  by the state courts, which in this case is the appellate court opinion. *Y1st*, 501 U.S. at 804.

1    Here, after applying a standard of review similar to the federal standard in *Jackson v. Virginia*,

2    443 U.S. 307, 318-19 (1979) [Lodgment No. 6 at 8], and after summarizing the applicable California law

3    [Lodgment No. 6 at 9] , the state appellate court held:

4        As to Cortes, the evidence shows Garcia approached Laura's car with what
         appeared to Laura to be a chain in his hand, and immediately thereafter the rear window
5        behind Cortes was hit. From this evidence, it is manifestly reasonable to infer Garcia
         in fact used the chain to strike the car window. Cortes's head was about 18 inches from the
6        window, and she moved forward to avoid possible breaking glass. A reasonable jury
         could conclude that Garcia's deliberate act of hitting a chain against the rear window of
7        Laura's car with sufficient force to "completely shatter[]" it was an act that would
         probably and directly result in battery to the rear seat passenger – by either the chain
8        breaking through the window and hitting her or causing glass shards to fall upon her.
         [Citation in footnote omitted.] The fact the battery did not actually occur is irrelevant.
9        "As [the California Supreme Court] explained more than a century ago, 'Holding up a
         fist in a menacing manner, drawing a sword, or bayonet, presenting a gun at a person
10       who is within its range, have been held to constitute an assault.'" (*People v. Colantuono*,
         *supra*, 7 Cal.4th at p. 219; *People v. Raviart* (2001) 93 Cal.App.4th 258, 267.) There is
11       no requirement that a defendant must "do everything physically possible to complete a
         battery short of actually causing physical injury to the victim." (*People v. Raviart*, at p.
12       266.) We conclude the evidence was sufficient to support Ortiz's conviction for assault
         against Cortes.
13           We reject Ortiz's arguments to the contrary. Ortiz maintains the evidence is
         legally insufficient to prove Garcia intended to commit a battery because the rear window
14       of Laura's car was tinted, and as a result, he could not have known Cortes was sitting in
         the rear seat. For the underlying factual proposition, Ortiz cites to his counsel's
15       argument during his motion for acquittal. Counsel's unsworn argument is not evidence.
         (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1173; see CALJIC No. 1.02.) But even
16       assuming the rear window was tinted, we are provided no evidence as to the darkness of
         the tint, and there is no basis to conclude that at least the outline of a passenger could not
17       be seen through the tinted glass. Absent evidence to the contrary, we will presume in
         support of the verdict the passenger was visible through the tinted glass. (*People v. Hill*
18       (1998) 17 Cal.4th 800, 848-849 [court will presume in support of the verdict the
         existence of every fact the court or jury could reasonably deduce from the evidence].)
19           Nor are we persuaded by Ortiz's argument that there is no evidence of Garcia's
         present ability to apply physical force because his hands would not be sufficient to apply
20       such force. Ortiz reasons that by finding Garcia not guilty of assault with a deadly
         weapon, the jury necessarily concluded Garcia did not use any weapon when he struck
21       the back windshield and thus Garcia must have used his hands to hit the rear window.
         This reasoning fails. The jury's acquittal on the assault with a deadly weapon count does
22       not mean the jury concluded Garcia did not have *any* weapon in his hand when he hit the
         rear window of Laura's car. The jury could have simply concluded the evidence was
23       insufficient to conclude the object in Garcia's hand was a deadly weapon. [Footnote and
         citations therein omitted.]

24   [Lodgment No. 6 at 9 - 11.]

25       The clearly established federal law regarding sufficiency of the evidence claims in the criminal

26   context is set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In *Jackson*, the Court held that the

27   Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to habeas corpus

28   relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have

1   found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.   In making this
2   determination, habeas courts must respect the province of the jury to determine the credibility of
3   witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming
4   the jury resolved all conflicts in a manner that supports the verdict. *Id.* at 319.   Once a state court fact
5   finder has found a defendant guilty, federal habeas courts must consider the evidence "in the light most
6   favorable to the prosecution." *Id.*  Federal habeas courts must also analyze *Jackson* claims "with explicit
7   reference to the substantive elements of the criminal offense as defined by *state* law." *Id.* at 324 n. 16
8   (emphasis added).  On habeas review, the Ninth Circuit has concluded that "[a]fter AEDPA, we apply
9   the standards of *Jackson* with an additional layer of deference." *Juan H.*, 408 F.3d at 1274.

10      This Court is bound by the pronouncement of state law by the appellate court. *See e.g. Mullaney*
11   *v. Wilbur*, 421 U.S. 684, 691 (1975) (recognizing that state courts are "the ultimate expositors of state
12   law," and federal courts are bound by their constructions except in extreme circumstances such as where
13   a state court's interpretation of state law appears to be an "obvious subterfuge to evade consideration
14   of a federal issue.") "(W)here there is no convincing evidence that the state supreme court would decide
15   differently, a federal court is obligated to follow the decisions of the state's intermediate appellate
16   courts." *Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 995 (9th Cir. 2007) (internal quotation marks
17   omitted).

18      As noted by the state appellate court in this case [*see* Lodgment No. 6 at 9], in California, the
19   statutory definition of assault is "an unlawful attempt, coupled with a present ability, to commit a violent
20   injury on the person of another."  Cal. Penal Code § 240.  Moreover, in California, assault is a general
21   intent crime and "does not require a specific intent to cause injury or a subjective awareness of the risk
22   that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those
23   facts sufficient to establish that the act by its nature will probably and directly result in the application
24   of physical force against another." *People v. Williams,*, 26 Cal. 4th 779, 790 (2001). *Accord People v.*
25   *Ibarra*, 156 Cal.App.4th 1174, 1193, 1194 (2007).

26      Here, there was sufficient evidence to support Petitioner's conviction for assault against Cortes.
27   The evidence shows that Garcia approached Laura's car with what appeared to Laura to be a chain in
28   his hand, and immediately thereafter the rear window behind Cortes was hit. [Lodgment No. 6 at 150-

1  160.] The evidence also shows that Cortes's head was approximately 18 inches from the window, and

2  she moved forward to avoid possible breaking glass. [Lodgment No. 2 at 460-462.] Thus, there was

3  sufficient evidence for a jury to conclude that Garcia's act of hitting a chain against the rear window of

4  Laura's car with enough force to shatter it was an "intentional act" and that Garcia had "actual

5  knowledge of those facts sufficient to establish that the act by its nature [would] probably and directly

6  result in the application of physical force against another." *People v. Williams*, 26 Cal.4th at 790.

7       Petitioner's argument that the evidence was legally insufficient to prove Garcia intended to

8  commit a battery because the rear window of Laura's seat was tinted is also flawed.  Petitioner does not

9  point to any admissible evidence that the rear window was tinted. *See Fuller v. Tucker*, 84 Cal.App.4th

10  1163, 1173 (counsel's unsworn argument is not evidence). Moreover, even if there was such evidence,

11  there is no evidence that at least the outline of the passenger could not be seen through the [now

12  allegedly] tinted glass. A federal court faced with a factual record "that supports conflicting inferences

13  must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any

14  such conflicts in favor of the prosecution, and must defer to that resolution. *Jackson*, 443 U.S. at 326.

15  *See also People v. Hill*, 17 Cal.4th 800, 848-849(1998)(court will presume in support of the verdict the

16  existence of every fact the court or jury could reasonably deduce from the evidence). Therefore, this

17  argument is not persuasive.

18       Finally, this court rejects Petitioner's argument that there is no evidence of Garcia's present

19  ability to apply physical force because his hands would not be sufficient to apply such force.  According

20  to Petitioner, by finding Garcia not guilty of assault with a deadly weapon, the jury necessarily concluded

21  Garcia did not use *any* weapon when he struck the back windshield and thus Garcia must have used his

22  hands to hit the rear window. [Lodgment No. 7 at 10.]  However, the jury's acquittal on the assault with

23  a deadly weapon count does not mean the jury concluded Garcia did not have *any* weapon; rather, the

24  jury could simply have concluded the object in Garcia's hand as it pertained to Cortes was a not a *deadly*

25  weapon.[6]  Therefore, this argument also fails.

26  _____

27       [6]  In his state Petition for Review (and, presumably, this Petition), Petitioner points out that the
   jury did conclude that the chain was a deadly weapon with regard to Garcia's assault of Laura and
28  Rodriguez, and that this inconsistency further supports his arguments regarding insufficiency of the
   evidence as to Cortes. [Lodgment No. 7 at 10, 11.] However, the circumstances surrounding the assault
   on Laura and Rodriguez were different and, therefore, could account for the difference in the jury's

1    Given this court's finding that there is sufficient evidence to uphold the jury's verdict as to

2   Cortes, there is no basis for federal habeas relief  under 28 U.S.C.A. § 2254(d) because the appellate

3   court's adjudication of this claim did not involve "an unreasonable application of *Jackson . . .* to the

4   facts of this case." *Allen*, 408 F.3d at 1275.

5           b. <u>Laura</u>

6    As to Laura, Petitioner contends the evidence was insufficient to prove that Garcia assaulted

7   Laura with a deadly weapon because the evidence was "equivocal" as to whether Garcia held anything

8   in his hand when he jumped on the car. [Lodgment No. 7 at 11.] Petitioner also contends that, even

9   assuming he did jump on the car with an object, applying a single blow to the windshield does not

10  amount to evidence of intent and present ability to apply physical force to Laura. [Lodgment No. 7 at

11  11 - 12.]

12   These arguments were also presented to the state appellate court. [Lodgment No. at 28 - 31.]

13  After again applying a standard of review similar to *Jackson*, and after summarizing the applicable state

14  law [Lodgment No. 6 at 12], the state appellate court held:

15

16           We reject Ortiz's arguments based on the "equivocal" nature of the evidence, as
         it amounts to an improper attack on the weight of the victims' testimony.  Laura testified
17       that right after Garcia jumped on the hood of her car, "an object" struck her front
         windshield in front of her.  According to her, the object had been in Garcia's hand and
18       appeared to be a chain.  Laura's testimony by itself permits the jury to conclude that
         Garcia was indeed holding a chain and used it to strike the windshield.  Laura
19       additionally testified that Garcia jumped onto the hood of her car just after she came to
         a standstill.  The fact Karla and Cortes may have given slightly inconsistent stories on
20       this point does not defeat our conclusion that Laura's testimony constitutes substantial
         evidence supporting the verdict.  As the People point out, we resolve all inferences and
21       inconsistencies in favor of the jury's findings, unless there is some reason why the
         evidence is incapable of belief.  (See *People v. Tewksbury* (1976) 15 Cal.3d 953, 962;
22       *People v. Cortes* (1999) 71 Cal.App.4th 62, 73-74.)  Nothing in Laura's story amounts
         to a physical improbability or inherent impossibility.
             We also disagree that the evidence is insufficient to prove an intent and present
23       ability to apply physical force to Laura.  For the reasons expressed above with regard to
         the assault conviction as to Cortes, we conclude that the evidence, viewed favorably to
24       the judgment, established Garcia was "aware of the facts that would lead a reasonable
         person to realize that a battery would directly, naturally and probably result from his
25       conduct" in using a chain to smash the front windshield in front of Laura's face. (*People
         v. Williams, supra*, 26 Cal.4th at p. 788.)

26   _____

27  verdict. Moreover,  the alleged inconsistency of the verdicts on separate counts is generally not a basis
    for reversal, as long as there is sufficient evidence to support each count. *See United States v. Powell*,
28  469 U.S. 57, 67; *People v. Lewis*, 25 Cal. 4th 610, 656 (2001). As set forth above and below, there is
    sufficient evidence to support the verdict as to each count.

1     [Lodgment No. 6 at 12 - 13.]

2         As noted by the state appellate court [Lodgment No. 6 at 12], in California, "[t]he crime of

3 assault with a deadly weapon requires proof of the basic crime of assault plus proof that it was

4 accomplished by the use of a deadly weapon, or with force likely to cause great bodily injury." Cal.

5 Penal Code § 245(a). Moreover, a deadly weapon is "any object, instrument, or weapon which is used

6 in such manner as to be capable of producing, and likely to produce death or great bodily injury."

7 *People v. Lochtefeld*, 77 Cal.App.4th 533, 538 (2000). *Accord People v. Page*, 123 Cal.App.4th 1466,

8 1471 (2004).

9         Here, there was sufficient evidence to support the jury's verdict of assault with a deadly weapon

10 as to Laura. Specifically there was testimony that when Garcia got close to Laura's car, he jumped on

11 the hood. [Lodgment No. 2 at 183, 339-340, 435, 467.] His face was very close to Laura's and Karla's.

12 [Lodgment No. 2 at 183, 342.] He stared into the car. [Lodgment No. 2 at 183-185, 342.] Then he

13 jumped off the car and struck the windshield in front of Laura's face with something that looked like a

14 chain. [Lodgment No. 2 at 185-186, 188, 304-305, 336-338.] There was a loud crash, and the windshield

15 partially shattered. [Lodgement No. 2 at 186-187, 341, 351.] Thus, there was sufficient evidence for the

16 jury to conclude that Garcia was holding a chain, used it to strike the windshield, and committed that

17 act with "actual knowledge of those facts sufficient to establish that the act by its nature will probably

18 and directly result in the application of physical force to another." *People v. Williams*, 26 Cal. 4th at

19 790. Therefore, there is sufficient evidence to support the jury's verdict on this count, and habeas relief

20 is not available in this Court because the state appellate court's decision on this issue did not involve "an

21 unreasonable application of *Jackson* . . . to the facts of this case. *Allen*, 408 F.3d at 1275.

22         Accordingly, the Court finds that the state court's adjudication of claim one (as to both Cortes

23 and Laura) was neither contrary to nor involved an unreasonable application of clearly established

24 federal law, and was not based on an unreasonable determination of the facts in light of the state court

25 proceedings. This Court therefore recommends habeas relief be denied as to claim one.

26       <u>3. Claim Two – Sixth Amendment</u>

27         Petitioner contends the trial court violated his Sixth Amendment rights to confrontation under

28 *Crawford v. Washington*, 541 U.S. 36 (2004) (*Crawford*), when it permitted the prosecution to present

1  certain evidence for purposes of proving the enhancement under the Street Terrorism Enforcement and

2  Prevention (STEP) Act (Cal. Penal Code §186.22). [Lodgment No.7 at 15 - 41.] Specifically, Petitioner

3  contends his confrontation rights were violated by Detective Friedrich's testimony about Petitioner and

4  Garcia's affiliation with the South Los gang, including their admissions to police during field

5  investigations that they were South Los gang members. [Lodgment No. 7 at 15 - 30.] Petitioner further

6  asserts his Sixth Amendment rights were violated by the admission of similar evidence with regard to

7  Javier Martinez and Gary Ramirez, including their convictions by guilty plea, in order to prove predicate

8  offenses supporting "a pattern of criminal gang activity." [Lodgment No. 7 at 30 - 39.] In part, Petitioner

9  maintains evidence of a conviction based on a guilty plea is the functional equivalent of prior testimony,

10  and therefore prohibited under *Crawford* because neither Martinez nor Ramirez were available for cross-

11  examination. [Lodgment No. 7 at 30 - 35.]

12      These arguments were presented to the state appellate court. [Lodgment No. 3 at 32 - 58.].  In

13  it's decision, the state appellate court first discussed the United States Supreme Court's holding in

14  *Crawford* as follow:

15      In *Crawford*, the United States Supreme Court held that in a criminal case the Sixth Amendment's Confrontation Clause bars admission of out-of-court testimonial statements by an unavailable witness offered to prove the truth of the matter that it asserts unless the defendant has had a prior opportunity to cross-examine the witness about the statement. (*Crawford, supra,* 541 U.S. at p. ___[124 S.Ct. at pp. 1365-1366, 1374].)  The court rejected the standard it had articulated in *Ohio v. Roberts* (1980) 448 U.S. 56, 66, namely that such statements could be admitted at trial when (1) "the evidence falls within a firmly rooted hearsay exception" or (2) the statements contain "particularized guarantees of trustworthiness" such that adversarial testing would add little to the statements' reliability. (*Ibid.*) According to the *Crawford* court, this test was too broad because it applied the same analysis whether or not the hearsay consisted of ex parte testimony, and was, at the same time, too narrow because it admitted statements that did consist of ex parte testimony on a mere finding of reliability. (*Crawford,* at p. ___[124 S.Ct. at p. 1369.)

22      *Crawford* replaced the *Ohio v. Roberts* test with a new focus on the testimonial or nontestimonial nature of the out-of-court statement. In reaching its decision, the court declined to define the term "testimonial." (*Crawford, supra,* at p. ___[124 S.Ct. at p. 1374].)  Instead, it listed "[v]arious formulations" of what constitutes testimonial hearsay: "'[E]x parte in-court testimony or its functional equivalent (that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' [citation]; 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [citation]; 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . .'" (*Crawford, supra,* 541 U.S. at p. ___[124 S.Ct. at p. 1364].) In pointing out the flaws in the *Ohio v. Roberts* test, the court in *Crawford* also included as "core" or "plainly" testimonial statements (1) accomplice confessions or statements to

-15-                                            06cv1752

the authorities; (2) plea allocutions showing the existence of a conspiracy; (3) grand jury testimony; and (4) prior trial testimony. (*Crawford*, at p. ___ [124 S.Ct. at pp. 1371 - 1372].)

Concluding its discussion, the court said: "We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'  Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." (*Id.* at p. ___ [124 S.Ct. at p. 1374].)

[Lodgment No. 6 at 14 - 15.]

The state appellate court then applied the *Crawford* decision to Petitioner's claims:

Before assessing Ortiz's claims, it is important to understand what the prosecution was required to prove to subject him to an enhanced sentence for crimes committed "for the benefit of, at the direction of, or in association with, [a] criminal street gang." (§ 186.22, subd. (b)(1).)

"[T]o subject a defendant to the penal consequences of the STEP Act, the prosecution must prove that the crime for which the defendant was convicted had been 'committed for the benefit of, at the direction of, or in association with any criminal conduct by gang members.' [Citation.] In addition, the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period." (*People v. Gardeley* (1996) 14 Cal.4th 605, 616-617, emphasis omitted, citing § 186.22, subds. (b)(1), (e) and (f).)

[California Penal Code] Section 186.22 subdivision (e) provides in part: "As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons: [¶] (1) Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined by Section 245."

. . .

Ortiz's various challenges under *Crawford* encompass two categories of evidence: (1) Detective Friedrich's opinions as to Ortiz's and his codefendant's gang member status and (2) the evidence pertaining to asserted South Los gang members Martinez and Ramirez and documentation of their section 245 convictions, including change of plea forms reflecting guilty pleas, to prove a pattern of criminal gang activity. As we explain, we conclude there is no merit to Ortiz's confrontation clause challenge to either category.

Detective Friedrich's reliance on field investigation reports, admissions by Ortiz and Garcia as to their gang member status, and other hearsay matters as bases for his opinions did not violate *Crawford*. *Crawford* does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions and additionally, the materials on which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion.  In short, the field investigation reports were mentioned only as a basis for Friedrich's opinion that Ortiz and Garcia were documented members of the South Los gang and that their crimes were gang-related.  There was no Sixth Amendment violation based on Friedrich's reliance on the field investigation reports and other hearsay matters.

Nor did a *Crawford* violation arise from admission into evidence of the documentation of Martinez and Ramirez's convictions. Ortiz asserts the prosecutor did not show either Martinez or Ramirez were unavailable, and he "never had the opportunity to cross-examine either man as to the *reliability of his conviction.*" (Emphasis added.) His argument is misplaced. The relevant issue for proving a pattern of criminal gang activity is simply whether other South Los gang members – or even the defendant himself (*People v. Zermeno* (1999) 21 Cal.4th 927, 930-931) – had suffered convictions of statutorily enumerated offenses at particular times, not whether there is reliable evidence of Martinez or Ramirez's guilt.   In *People v. Duran* (2002) 97 Cal.App.4th 1448 (*Duran*), the court upheld use of a certified minute order reflecting a guilty plea to prove section 186.22 predicate offenses under Evidence Code sections 452.5 and 1280 in part on the ground such a document qualifies as an official record of conviction. (*Duran*, at pp. 1459-1460.) It observed based on the language of Penal Code section 186.22 that the Legislature intended that the section 186.22 predicate offenses "may be proved by a showing of the fact of the convictions, rather than proof of the underlying conduct, if the People so choose." (*Duran*, at p. 1461, fn. 5.) *Crawford* does not purport to address the use of documentary evidence in the form of official records admissible pursuant to Evidence Code sections 452.5, or 1280, and in our view such records are akin to business records that *Crawford* explicitly held "by their nature" are non-testimonial. (*Crawford*, supra, 541 U.S. at p. ___, 124 S.Ct. at p. 1374.)[7]

Further, the People's use of official superior court records for this purpose is entirely unlike the use put to the plea allocutions falling within *Crawford*'s reach; in the cases cited by *Crawford*, hearsay statements made within those pleas were admitted into evidence in order to prove the underlying fact of a conspiracy's existence. (*Crawford, supra,* 541 U.S. at p. ___ [124 S.Ct. at pp. 1371-1372]; *United States v. Aguilar* (9th Cir. 2002) 295 F.3d 1018, 1020 [defendant stipulated that various codefendants each "pled guilty to being a member of a conpiracy involving Jesse Detevis . . . which involved narcotics trafficking"; jury was instructed to consider evidence of the guilty pleas to prove "there was a conspiracy"].)   Here, the matter asserted with regard to these documents is not that Martinez and Ramirez engaged in violent or assaultive behavior against another person, but that the documents are accurate copies of their records of conviction.   Thus, if we were to find merit to Ortiz's contention, all that would change is the superior court's custodian of records would be called to appear at each trial and authenticate the records as true and correct copies.   Such statement are not within the "core class" of testimonial statements suggested in *Crawford*.

Finally, we reject Ortiz's challenges to the evidence of Martinez and Ramirez's gang member status.   First, as we have stated with respect to the evidence about Ortiz and his codefendant, Detective Friedrich's reliance upon arrest reports, crime reports, field investigations and photographs to reach his conclusions about Martinez and Ramirez's status as South Los gang members does not violate *Crawford* because those materials are not used to prove the truth of their contents, they are used as the basis for his opinions on which he was subject to cross-examination.   Second, we are not persuaded Friedrich's testimony was insufficient to establish these individuals' gang member status.   Arguing it is conclusory, Ortiz attempts to compare it to the expert testimony that was held insufficient in *In re Leland D.* (1990) 223 Cal.App.3d 251.   In *Leland D.*, the expert testimony was held insufficient to prove a gang enhancement because the expert did not provide any details of the crimes he attributed to the gang and based his opinion on "hearsay statements from unidentified gang members and information pertaining to arrests of purported gang members all made without a definite timeframe being established." (*Id.* at p. 259.)   Here, Detective Friedrich did not rely solely on arrest reports or the statements of other gang members, he based his opinions

_____

[7] Footnote 6 at this point in the original text reads: "Indeed, in his concurring opinion, Chief Justice Rehnquist added "official records" to the list of nontestimonial hearsay. (*Crawford, supra,* 541 U.S. at p. ___ [124 S.Ct. at p. 1378].)"

on police department files, including crime reports, field interview cards and photographs. We disagree with Ortiz's suggestion that his opinion was insufficient because there was no evidence of the "reporting officer's credibility" or any "indication as to what specific information contained in those [field interview] cards led [the detective] to believe Martinez and Ramirez were gang members." Such arguments are akin to those made in connection with Ortiz's Sixth Amendment Confrontation Clause challenge, which we have rejected. The material cited by Detective Friedrich provides a sufficiently reliable basis for his opinion about Martinez and Ramirez's gang member status.

[Lodgment No. 6 at 15 - 20.]

In California, a person may receive an enhanced sentence under the STEP Act if that person "actively participates in any criminal gang activity, and [] willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." Cal. Penal Code § 186.22(a). As the state appellate court noted [Lodgment No. 6 at 15, 16], to subject Petitioner to the enhanced penalty under the STEP Act, the prosecution was required to prove that the crimes were committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members. " Cal. Penal Code § 186.22(b)(1).

The STEP Act defines a "criminal street gang" as any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated [in the Act], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." Cal Penal Code §186.22(f). Finally, a "pattern of criminal gang activity" is defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons: [¶](1) Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245. . . . " Cal. Penal Code §186.22(e)(1).

This court agrees with the state appellate court that there was no Sixth Amendment violation when the trial court permitted the prosecution to present certain evidence for purposes of proving the enhancement under the STEP Act. Specifically, Detective Friedrich's reliance on field investigation reports, admissions by Ortiz and Garcia as to their gang member status, and other hearsay matters as bases for his opinions did not violate *Crawford* because those items were not admitted for the truth of

the matter asserted. [Lodgment No. 1 at 108-109; Lodgment No. 2 at 802, 900-902 (jury instructed that Detective Friedrich's testimony about the materials he relied upon to form his expert opinions were offered for that strictly limited purpose only, and not for the truth of the matter asserted).] Moreover, Detective Friedrich's reliance on those materials  was subject to cross-examination. [Lodgment No. 2 at 674-685, 795-890, 895-902.] Given the limiting instructions and the cross-examination, there was no *Crawford* violation by allowing Detective Freidrich to rely on field investigation reports, admissions by Ortiz and Garcia as to their gang member status and other hearsay matters as bases for his opinion. *See Crawford*, 541 U.S. at 52-53, 68 (Sixth Amendment's Confrontation clause bars admission of out-of-court testimonial statements by an unavailable witness only if offered to prove the truth of the matters that it asserts and if the defendant has not had a prior opportunity to cross-examine the witness about the statement).

In addition, there was no *Crawford* violation from the admission into evidence of the documentation of Martinez's and Ramirez's convictions.[8] *Crawford* does not prohibit the use of official records because "by their nature" they are non-testimonial. *See Crawford*, 541 U.S. at 68.  Moreover, the documents were used only to prove that these individuals were, in fact, convicted of statutorily enumerated offenses at particular times (as is required by Cal. Penal Code § 186.22 (b)(1) and (e)), not whether there was reliable evidence of their guilt.

Finally, there is no merit to Petitioner's argument that the evidence relied upon by Detective Friedrich to conclude that Martinez and Ramirez were members of the South Los gang violated *Crawford* because the evidence was not introduced for the truth of the matter asserted [Lodgment No. 1 at 108-109; Lodgment No. 2 at 802, 900-902] and Detective Friedrich's reliance on the evidence was subject to cross-examination. [Lodgment No. 2 at 674-685, 795-890, 895-902.] *See Crawford*, 541 U.S. at 52-53, 68.  Detective Friedrich's testimony was also sufficient to establish these individuals' gang member status because he did not rely solely on arrest reports or the statements of other gang members. *See In re Leland D.*, 223 Cal.App.3d 251, 259 (1990) (expert testimony held insufficient to prove gang enhancement because the expert did not provide any details of the crimes he attributed to the gang and

---

[8]  The Martinez and Ramirez convictions were relevant to the issue of whether there was a "criminal street gang" engaging in a "pattern of criminal gang activity" under Cal. Penal Code §186.22 (b)(1) and (e).

based his opinion on "hearsay statements from unidentified gang members and information pertaining to arrests or purported gang members all made without a definite time frame being established.") Rather, Detective Friedrich based his opinions not only on arrest reports or the statements of other gang members, but also on police department files, including crime reports, field interview cards and photographs.  Moreover, for the reasons set forth above, these items were admissible for a limited purpose.  *See Crawford,* 541 U.S. 52-53, 68.  Therefore, there is no *Crawford* violation with regard to the  evidence relied upon by Detective Friedrich regarding Martinez and Ramirez.

Accordingly, this Court finds that the state court's adjudication of claim two was neither contrary to nor involved an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the state court proceedings.  This Court therefore recommends habeas relief be denied as to claim two.

## V.  CONCLUSION

This Court submits this Report and Recommendation to United States District Judge M. James Lorenz under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.   For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition in its entirety.

**IT IS ORDERED** that no later than **June 9, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **10 days after being served with the objections**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those

/ / / / /

/ / / / /

/ / / / /

/ / / / /

1    objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998);

2    *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

3       **IT IS SO ORDERED**.

4

5    DATED:  May 5, 2008

6

7                          **CATHY ANN BENCIVENGO**
                         United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-

06cv1752